1
2
3
4
5
6
7
8
9
10
11
12

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

GOMER GOMEZ,                          )
                                      )
               Plaintiff,             )
                                      )
        vs.                           )
                                      )        2:09-cv-01489-RCJ-LRL
COUNTRYWIDE BANK, FSB.;               )
COUNTRYWIDE HOME LOANS;               )
RECONTRUST COMPANY, et al.,           )        **ORDER**
                                      )
                                      )
               Defendants.            )
_____)

13    Plaintiff Gomer Gomez has sued Defendants Countrywide Bank, FSB ("Countrywide

14    Bank"), Countrywide Home Loans ("Countrywide"), Mortgage Electronic Registration Systems

15    ("MERS"), Recontrust Co. ("Recontrust") (collectively, "Defendants"), Doe Individuals I–X, and

16    Roe Corporations I–X on multiple causes of action related to the foreclosure of his mortgage.

17    Pending before the Court is Defendants' Motion to Dismiss (#9).  Plaintiff has filed a Response

18    (#10), and Defendants have filed a Reply (#14).  For the reasons given herein, the Court grants the

19    Motion to Dismiss (#9) without leave to amend.

20    **I.      FACTS AND PROCEDURAL HISTORY**

21    On or about August 28, 2007, Plaintiff Gomer Gomez purchased a property located at 4428

22    Cormorant Ave., Las Vegas, NV 89115 ("the Property").  Gomez executed a promissory note and

23    deed of trust with lender Countrywide Bank. (#1 at ¶ 8).[1]  Plaintiff claims the note and deed of trust

24    _____

25    [1]The Court takes judicial notice of the public records adduced by Defendants (#8). *See*
      *Mack v. S. Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986).

1   were sold. (*Id.* at ¶ 11). Sometime thereafter, MERS allegedly substituted Recontrust as trustee on

2   the deed of trust, and Recontrust subsequently recorded a notice of default and election to sell. (*Id.*).

3   Plaintiff claims this was wrongful because "MERS was not and is not an Agent and has NO right

4   to act for or on behalf of or as a beneficiary, but is merely a nominee who holds title in his name for

5   another . . . ." (*Id.* at ¶ 10).

6        Further examination of the role of a nominee is in order, as the present glut of mortgage-

7   related lawsuits has brought into controversy the scope of the powers of varies kinds of parties listed

8   on deeds of trust.  Black's Law Dictionary lists three definitions for "nominee." Black's Law

9   Dictionary 1076 (8th ed. 2004).  The first definition has to do with political candidates.  The second

10   definition is relevant in the present context.  "2. A person designated to act in place of another,

11   [usually] in a very limited way." *Id.*  In short, a nominee is an agent with limited powers, akin to a

12   special power of attorney.  This applies to cases such as the present one, where an entity (often

13   MERS) is nominated on a deed of trust by the holder of a promissory note, with the limited role of

14   administering the deed of trust on the holder's behalf.  Part of the confusion seems to result from the

15   fact that the scope of this role is not often stated clearly on the deed of trust, but is simply taken for

16   granted by those in the industry.  Plaintiffs also sometimes allude, as in the present action, to the

17   third and last definition of "nominee," pointing out that the nominee only has legal title:  "A party

18   who holds bare legal title for the benefit of others or who receives and distributes funds for the

19   benefit of others." *Id.*  Plaintiffs then claim that this does not entitle such a nominee to substitute a

20   trustee on behalf of the holder.  This argument, however, conflates the concept of a "nominee" with

21   its definition.  A concept is not the same as its definition.  A definition attempts to *describe* a concept

22   according to the concept's essential attributes.  Concepts listed in dictionaries often have several

23   definitions, as in this case, which amount to different ways of describing the concept.  Here, the

24   second definition of nominee indicates that a nominee is a limited agent.  In the context of a nominee

25   on a deed of trust, this clearly implies that the nominee is granted authority as an agent to act on

behalf of the nominator (holder of the promissory note) as to administration of the deed of trust, which clearly would include substitution of trustees—what other duty would the administrator of a deed of trust have to perform?  The third definition of "nominee" does not negate the second.  It simply claims that a nominee is a party holding legal title (as opposed to equitable title) to the property. This third definition is given in the context of receiving and distributing funds.  Assuming it can be applied to the mortgage context, the nominee would be a person who administers the deed of trust for the benefit of others.  This creates no conflict with the second definition.  It still indicates that a nominee is a kind of agent working for the benefit of another.  In the present case, that other person is the nominator—the holder of the promissory note.

The trouble typically begins when a nominee substitutes a new trustee on the deed of trust, which it has the right to do as the holder's nominee.  The substituted trustee then forecloses when the mortgagor/trustor defaults on the promissory note.  The mortgagor/trustor then complains that the foreclosing trustee is acting wrongly because it does not itself hold the promissory note, or because it was not the original trustee on the deed of trust, or because the foreclosing trustee was substituted by an entity (usually MERS) that was not an agent of the original or subsequent holder of the note.  Oftentimes, the argument the mortgagor/trustor makes is not clear.  But one thing is clear:  so long as the note is in default and the foreclosing trustee is either the original trustee or has been substituted by the holder of the note or the holder's nominee, there is simply no defect in foreclosure, at least in states such as Nevada where a trustee may foreclose non-judicially.

Another source of confusion is the fact that entities such as MERS are often not only named as a nominee, but as a "beneficiary" on deeds of trust.  This unorthodox usage of the word "beneficiary" causes all manner of havoc.  Oftentimes, it is clear that defendants in these actions do not understand the source of the confusion themselves, as they use the word "beneficiary" without attempting to untangle the confusion.  Black's gives three definitions for this word.  The first definition is the most common one: "A person for whose benefit property is held in trust; esp., one

1   designated to benefit from an appointment, disposition, or assignment (as in a will, insurance policy,

2   etc.), or to receive something as a result of a legal arrangement or instrument." *Id.* at 165.  From this

3   most common definition of the word, plaintiffs typically conclude that because MERS does not stand

4   to benefit directly from the foreclosure and has no right to sue on the promissory note (which is

5   almost always true), that MERS cannot possibly be a "beneficiary."  It is correct that MERS is not

6   a "true beneficiary."  MERS is the nominee of the true beneficiary.  Often, the true beneficiary (the

7   lender/nominator) will indicate this distinction on the deed of trust by referring to MERS as the

8   "beneficiary of record."  This is a fiction.  MERS is not a beneficiary in any ordinary sense of the

9   word.  Calling MERS a beneficiary is what causes much of the confusion.  To a large extent,

10  defendants in these actions have brought this mass of litigation upon themselves by this confusing,

11  unorthodox, and unnecessary use of the word "beneficiary" to describe MERS' role.  A

12  lender/nominator need only refer to MERS as a "nominee."  This is sufficient to establish that MERS

13  is the agent of the lender with respect to administration of the deed of trust.

14          Calling MERS a "beneficiary" is both incorrect and unnecessary.  In Nevada, the beneficiary

15  is not the only entity that can record the notice of breach and election to sell—the trustee may do this.

16  Nev. Rev. Stat. § 107.080(2)(b).  So there is simply no need for a lender to call MERS a

17  "beneficiary."  The trustee or "other person authorized to make the sale under the terms of the trust

18  deed" may make the sale. § 107.080(4).  There is no need for any "beneficiary" to make the sale.

19  Courts often hold that MERS does not have standing as a beneficiary because it is not one, regardless

20  of what a deed of trust says, but that it does have standing as an agent of the beneficiary where it is

21  the nominee of the lender (who is the "true" beneficiary).  *See* Gerald Korngold, *Legal and Policy*

22  *Choices in the Aftermath of the Subprime and Mortgage Financing Crisis*, 60 S.C. L. Rev. 727,

23  741–43 (2009); Carol Mills & Brian Langford, *Recent Bankruptcy Decisions Expose Pitfalls and*

24  *Opportunities*, Advocate, Idaho State Bar (June/July 2009).  A possible defect in foreclosure remains

25  when a note has been negotiated, and there is no evidence that the foreclosing trustee is the nominee

1    of the current holder, or that the foreclosing trustee was substituted by a nominee of the current

2    holder.

3            Here, Plaintiff claims this to be the case.  But even assuming there has been negotiation, it

4    is probably the case that as a matter of law a subsequent holder ratifies a prior holder's assignment

5    of nominees and trustees on a corresponding deed of trust by silence.  This result would make sense

6    because "the mortgage goes with the note." *Rodney v. Ariz. Bank*, 836 P.2d 434, 436 (Ariz. App.

7    1992) (quoting *Hill v. Favour*, 52 Ariz. 561, 568 (1938)).  This has been the law in California since

8    before the Civil War. *Ord v. McKee*, 5 Cal. 515, 515 (1855) ("A mortgage is a mere incident to the

9    debt which it secures, and follows the transfer of the note with the full effect of a regular

10   assignment.").  There does not seem to be any principle of law requiring a subsequent holder of a

11   promissory note to re-execute an attendant security interest.  There is no claim or indication in the

12   present case that the current holder of the note, if not Countrywide Bank, challenges the foreclosure.

13   Plaintiff has not claimed that any new holder of the note has executed and recorded a deed of trust

14   with a different nominee or trustee.  The Court could take judicial notice of such evidence if Plaintiff

15   were to produce it.  The fact that there is neither evidence nor claim of such documents—documents

16   that would be simple to procure and that would powerfully bolster Plaintiff's case if extant—is a

17   strong indication that the only deed of trust in existence is that adduced by Defendants.  This deed

18   of trust follows the note, and it is still in force.

19           Distilled, Plaintiff's argument is that transfer of a promissory note causes prior security

20   instruments to auto-nullify unless re-executed.  This argument is rejected.  It would be a monstrously

21   unreasonable restraint on alienation to require the approval of the maker of a promissory note (via

22   re-execution of a deed of trust) as a condition of negotiation, lest the endorsee lose the endorser's

23   security interest in the note.

24

25

1   The deed of trust in this case lists MERS as lender Countrywide Bank's "nominee" and

2   "beneficiary" (again, this latter designation is incorrect[2] but unnecessary) and lists Recontrust as

3   trustee. (#8 at 6).  Contrary to Plaintiff's assertion, Recontrust has apparently been the trustee from

4   the beginning and was not substituted by MERS. (*See id.*)  Plaintiff's attorneys apparently filed the

5   present form complaint without checking the facts of this particular case very closely.   Gomez

6   defaulted on the note in November 2008, and Recontrust filed notices of default and trustee sale

7   against the Property on March 18 and June 25, 2009, respectively. (#8, Ex. D, ll. 8–9).

8   Plaintiff sued Defendants in the Clark County District Court on July 10, 2009 over the

9   foreclosure of the Property. (#1 at 8).  The Complaint lists eleven causes of action: (1) Fraud; (2)

10   Breach of Duty of Good Faith and Fair Dealing; (3) Quiet Title; (4) Breach of Fiduciary Duty; (5);

11   Injunctive Relief for Wrongful Foreclosure; (6) "Suitability"; (7) Negligence; (8) "Liability per se";

12   (9) Negligent Misrepresentation; (10) Unfair Lending Practices Under Nev. Rev. Stat. § 589D; and

13   (11) Intentional Infliction of Emotional Distress.  It is a form complaint that has been seen many

14   times in this Court.  Defendants removed the case to this Court (#1) and filed the present Motion to

15   Dismiss. (#9).

16   **II.     RULE 12(b)(6) STANDARD**

17   Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the

18   claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what

19   the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  The

20   rule cuts both ways.  Although a short, plain statement of the case showing a right to relief is

21

22   [2]It cannot be stressed enough that calling MERS a beneficiary in a deed of trust does not
     make it so. *Cf. In re Kalian*, 178 B.R. 308, 313 (Bankr. D.R.I. 1995) ("Labeling a contract term

23   an interest provision does not make it so."); *In re Gen. Assignment for Benefit of Creditors of
     Merkel, Inc.*, 259 N.Y.S.2d 514, 516 (1965) ("[C]alling an agreement a lease does not make it so

24   . . . ."); *Tate v. Claussen-lawrence Const. Co.*, 167 S.E. 826, 829 (S.C. 1933) (""[M]ere
     declaration does not make the contract something other than agency if a proper construction of its

25   terms shows that the relation is one in fact of principal and agent.").

1    sufficient, it is also necessary.  Although there is some allowance for extraneous material, a long,

2    rambling, confusing, and conclusory diatribe is too much, and a court may in its discretion dismiss

3    such a complaint under Rule 8(e). *Nevijel v. North Coast Life Ins. Co.*, 651 F.2d 671, 674 (9th Cir.

4    1981).

5          Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that

6    fails to state a claim upon which relief can be granted.  A motion to dismiss under Rule 12(b)(6) tests

7    the complaint's sufficiency. *See North Star Int'l. v. Arizona Corp. Comm'n.*, 720 F.2d 578, 581 (9th

8    Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim,

9    dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally

10   cognizable claim and the grounds on which it rests.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

11   555 (2007).  In considering whether the complaint is sufficient to state a claim, the court will take

12   all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL*

13   *Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).  The court, however, is not required to

14   accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

15   inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

16         "Generally, a district court may not consider any material beyond the pleadings in ruling on

17   a Rule 12(b)(6) motion . . . However, material which is properly submitted as part of the complaint

18   may be considered on a motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896

19   F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted).  Similarly, "documents whose contents are

20   alleged in a complaint and whose authenticity no party questions, but which are not physically

21   attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without

22   converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d

23   449, 454 (9th Cir. 1994).  Moreover, under Federal Rule of Evidence 201, a court may take judicial

24   notice of "matters of public record." *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir.

25   1986).  Otherwise, if the district court considers materials outside of the pleadings, the motion to

1  dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp.*

2  *Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

3         If the court grants a motion to dismiss a complaint, it must then decide whether to grant leave

4  to amend.  The court should "freely give" leave to amend when there is no "undue delay, bad faith[,]

5  dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of . .

6  . the amendment, [or] futility of the amendment . . . ." FED. R. CIV. P. 15(a); *Foman v. Davis*, 371

7  U.S. 178, 182 (1962).  Generally, leave to amend is only denied when it is clear that the deficiencies

8  of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc*., 957 F.2d

9  655, 658 (9th Cir. 1992).

10  **III.    ANALYSIS**

11         **A.    Fraud**

12         The elements of common law fraud in Nevada are:

13         1. A false representation made by the defendant;
       2. Defendant's knowledge or belief that the representation is false (or insufficient
14       basis for making the representation);
       3. Defendant's intention to induce the plaintiff to act or to refrain from acting in
15       reliance upon the misrepresentation;
       4. Plaintiff's justifiable reliance upon the misrepresentation; and
16       5. Damage to the plaintiff resulting from such reliance.

17  *Bulman, Inc. v. Nev. Bell*, 825 P.2d 588, 592 (Nev. 1992).   Furthermore, under Rule 9(b),

18  circumstances constituting fraud or mistake must be stated with particularity. Fed. R. Civ. P. 9(b).

19  A Plaintiff must plead facts such as "he bought a house from defendant, that the defendant assured

20  him that it was in perfect shape, and that in fact the house turned out to be built on a landfill . . . ."

21  *Warshaw v. Xoma Corp.*, 74 F.3d 955, 960 (9th Cir 1996) (quoting *In re GlenFed, Inc. Sec. Litig.*,

22  42 F.3d 1541, 1548 (9th Cir. 1995) (en banc)).

23         Defendants claim that Plaintiff has not pled with the requisite particularity and that he has

24  failed to state a claim in any case, because the loan he received was exactly what he alleges he was

25  supposed to receive.  Gomez has not sufficiently pled an action for fraud.  He claims that Defendants

1  made knowingly false representations intending to induce reliance, and that he has been damaged

2  because of his reliance on the representations. (#1 at ¶¶ 18–24).  The claims are entirely conclusory,

3  however.  Plaintiff does not claim that Defendants made any false representations concerning the

4  terms of the deal.  He claims only that they made overly-rosy estimates of his ability to afford the

5  loan over time.  A cause of action for fraud does not lie for bad financial advice.  Defendants cannot

6  be expected to have predicted the economic downturn, which is the real reason of Plaintiff's

7  hardships.  The Motion to Dismiss (#9) is granted as to the First Cause of Action.

8  **B.    Breach of Duty of Good Faith and Fair Dealing**

9       There is an implied covenant of good faith and fair dealing inherent in every contract

10  whereby no party will do anything that will destroy or injure the right of another party to receive the

11  fruits of the contract. 17A Am. Jur. 2d *Contracts* § 370 (2009).

12       Plaintiff has not made any claim of fact that if true would indicate that Defendants did

13  anything to wrongfully injure Plaintiff's rights to receive the benefit of the bargain entered into.

14  Rather, he complains that he made a bad bargain.  Although Plaintiff puts forth Defendants' superior

15  bargaining position and alleged refusal to provide him with information as a violation of the implied

16  covenant of good faith and fair dealing, because Plaintiff claims this tort occurred as part of the

17  bargaining process itself, it is essentially a claim of procedural unconscionability, not for a violation

18  of the implied covenant of good faith and fair dealing.  Procedural unconscionability exists where

19  a party lacks meaningful opportunity to bargain because of unequal bargaining power. *D.R. Horton,*

20  *Inc. v. Green*, 96 P.3d 1159, 1162 (Nev. 2004).  This is the crux of Plaintiff's claim, and there is no

21  indication that Plaintiff was unable to bargain with Defendants.  Plaintiff admits he received the

22  benefit of the loan negotiated.  Furthermore, Plaintiff complains that Defendants misrepresented "the

23  cost of the credit," but this again concerns negotiations, not dealing under the completed contract.

24  The Court grants the Motion to Dismiss (#9) as to the Second Cause of Action.

25

1    **C.    Quiet Title**

2         Plaintiff asks the Court to quiet title.  There is no claim in the Complaint that Plaintiff is not

3    in default.  Plaintiff makes conclusory accusations that the foreclosure action constitutes a "slander

4    of the title." (#1 at ¶ 37).  This claim is legally unmeritorious.  Plaintiff has not claimed any facts

5    indicating that his title to the property is superior to Defendants', who have provided clear evidence

6    that the foreclosure was proper.  The Court grants the Motion to Dismiss (#9) as to the Third Cause

7    of Action.

8    **D.    Breach of Fiduciary Duty**

9         A fiduciary duty exists in Nevada between doctor and patient, *Hoopes v. Hammargren*, 725

10   P.2d 238, 242 (Nev. 1986) and between attorney and client, *Stalk v. Mushkin*, 199 P.3d 838, 843

11   (Nev. 2009), but not between lender and debtor.  Indeed, such parties are adversaries, not fiduciaries.

12   *See Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 882 (9th Cir. 2007) (noting that the

13   district court in that case had held that the Nevada Supreme Court would not recognize a fiduciary

14   relationship as a matter of law between a lender and borrower).

15        Plaintiff claims that Defendants breached a fiduciary duty to him.  Plaintiff has not pled

16   sufficiently to survive a motion to dismiss.  As a matter of law, lenders are not agents or fiduciaries

17   of a borrower.  Plaintiff has made no claims indicating a special relationship between him and

18   Defendants giving rise to a fiduciary duty aside from the routine, arms-length transactions Plaintiff

19   entered into with them.  The Court grants the Motion to Dismiss (#9) as to the Fourth Cause of

20   Action.

21   **E.    Injunctive Relief for Wrongful Foreclosure**

22        Federal Rule of Civil Procedure 65(a) allows a court to issue a preliminary injunction on

23   notice to an adverse party.  The Ninth Circuit employs two sets of criteria for evaluating a request

24   for preliminary injunctive relief.  Under the "traditional test," the movant must establish: "(1) a

25   strong likelihood of success on the merits, (2) the possibility of irreparable injury to the plaintiff if

preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases)." *Beardslee v. Woodford*, 395 F.3d 1064, 1067 (9th Cir. 2005) (citation omitted).  As to the second element, the Supreme Court recently clarified that a plaintiff seeking an injunction must demonstrate that irreparable harm is likely, not just possible. *Winter v. NRDC, Inc*., 129 S. Ct. 365, 375–76 (2008).  Under the "alternative test," the plaintiff can meet its burden by showing "either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor." *Beardslee*, 395 F.3d at 1067 (citation and internal quotation marks omitted).  "These two alternatives represent 'extremes of a single continuum,' rather than two separate tests." *Id.* (citations omitted).

        "An action for the tort of wrongful foreclosure will lie if the trustor or mortgagor can establish that at the time the power of sale was exercised or the foreclosure occurred, no breach of condition or failure of performance existed . . . ." *Collins v. Union Fed. Sav. & Loan Ass'n*, 662 P.2d 610, 623 (Nev. 1983).  Furthermore, the only state apparently to have directly addressed the issue, Missouri, holds a foreclosure void when a party attempts to foreclose without holding title to the underlying promissory note. *Graham v. Oliver*, 659 S.W.2d 601, 603 (Mo. App. 1983) (citing *Cobe v. Lovan*, 92 S.W. 93 (Mo. 1906) (holding that such a foreclosure sale is void)).  There is no Nevada case law on point, but this is a commonsense rule.  A person without the right to enforce an obligation cannot have recourse to repossess collateral even if he possesses a security instrument, because he has not suffered a default.  Moreover, with mortgages, a contrary rule could result in the odd situation that the holder of a promissory note and the respective holder of a deed of trust, when not the same person, or when the latter was not the agent or "nominee" of the former, would potentially be competing creditors as to the underlying property when the former had not given its right to elect foreclosure to the latter.  The law avoids this situation by holding that, "the mortgage goes with the note." *Rodney*, 836 P.2d at 436 (quoting *Hill*, 52 Ariz. at 568).

1    Plaintiff claims that Defendant has wrongfully foreclosed because "MERS wrongfully acting

2    as the Beneficiary, substituted RECONTRUST as the successive trustee and RECONTRUST

3    recorded the Notice of Default" (#1 at ¶ 47).  As discussed above, this is incorrect.  Recontrust

4    appears to have been the original trustee in this case.  In some cases Recontrust is indeed substituted

5    later, but not in this case.  Plaintiff's attorney has apparently filed a form complaint and failed to

6    check the facts before filing.  Anyway, MERS clearly has the right to make such substitutions as

7    nominee, as discussed in detail above.

8    Defendants are entitled to dismissal on this cause of action.  They have provided evidence

9    detailed above via judicial notice proving proper foreclosure, which Plaintiff has not countered.

10   Plaintiff has admitted default and has provided no evidence at all, apart from a claim that it is merely

11   possible, that the original lenders no longer hold the promissory notes at issue, which is the only

12   possible remaining fact pattern under which dismissal would plausibly not be appropriate.  Plaintiff

13   provides no evidence to this effect, but simply hopes against hope that perhaps the lenders or their

14   successors in interest negotiated the notes to parties that did not themselves assign or ratify

15   Recontrust as trustee, and that the Court rules that this is relevant.  There being no indication of this,

16   and the point being of no aid to Plaintiff if true, Plaintiff has no hope of succeeding on the merits of

17   this claim, and the Court grants the Motion to Dismiss (#9) as to the Fifth Cause of Action.

18   **F.    "Suitability"**

19   Gomez argues that Defendants are liable for having loaned him money under terms not

20   suitable to his financial position.  There is no such cause of action addressed anywhere in the Nevada

21   Reports.  *See Velasquez v. HBSC Mortgage Servs.*, No. 2:09-cv-00784-KJD-LRL, 2009 WL

22   2338852, at *4 (D. Nev. July 24, 2009) (rejecting such a cause of action).  Nor can "suitability" be

23   reasonably argued as a new cause of action, because the Nevada Legislature has considered and acted

24   on the issue via Chapter 598D of the Nevada Revised Statutes, entitled "Unfair Lending Practices."

25   The legislature has already squarely considered the issue and made a choice in the matter.  Indeed,

1    Plaintiff has brought a cause of action under these statutes.  The Sixth Cause of action is dismissed,

2    and Gomez's attorneys are admonished for filing this incognizable cause of action.

3    **G.    Negligence and "Liability per se"**

4           Presumably, Gomez means "negligence per se."  Liability exists where all elements of a

5    cause of action are proved.  The doctrine of negligence per se, as further explained below, is a

6    doctrine applicable to negligence claims whereby a Plaintiff can show the duty and breach elements

7    based on violation of a statute that replaces the general duty of care with a particular standard.

8    Causation and damages must still be proved to show liability.  There is no such thing as "liability

9    per se."

10          A prima facie claim for negligence in Nevada, as elsewhere, consists of four elements:  "(1)

11   an existing duty of care, (2) breach, (3) legal causation, and (4) damages." *Turner v. Mandalay*

12   *Sports Entm't. LLC*, 180 P.3d 1172, 1175 (Nev. 2008).  Although sometimes pled as such,

13   negligence per se is not a separate cause of action but a doctrine whereby a court will consider the

14   negligence elements of duty and breach satisfied as a matter of law, leaving only causation and

15   damages to be determined by the fact-finder, where:  (1) a plaintiff can show that a defendant has

16   violated a duty imposed onto him by a criminal or regulatory statute; (2) the plaintiff is a member

17   of the class of persons intended to be protected by the statute or regulation; and (3) the alleged harm

18   resulting is of the kind intended to be prevented by statute. *Ashwood v. Clark County*, 930 P.2d 740,

19   743–44 (Nev. 1997) (citing *Sagebrush Ltd. v. Carson City*, 660 P.2d 1013, 1015 (Nev. 1983)); *see*

20   Restatement (Second) of Torts § 286.  Plaintiff claims that Defendants were negligent in their

21   professional duties to him. Plaintiff also claims they were negligent per se because they breached

22   duties created by statute.

23          A lender generally owes no duty of care to its borrower. *See Nymark v. Heart Fed. Savs. &*

24   *Loan*, 231 Cal. App. 3d 1089, 1096 (1991).  But this is only true in a lender's "conventional role as

25   a mere lender of money." *Id.*  It does not indicate that in California (or Nevada) that lenders (or

others) have any duty of care in foreclosing proceedings.  The U.S. District Court for the Northern District of California recently found that a foreclosure trustee has a duty of care to a trustor, but that the scope of the duty is circumscribed by the statutes governing foreclosures. *Hendrickson v. Popular Mortgage Servicing, Inc.*, No. 09-00472-CW, 2009 WL 1455491, at *7 (N.D. Cal. May 21, 2009) ("[T]he scope and nature of the trustee's duties in a nonjudicial foreclosure 'are exclusively defined by the deed of trust and the governing statutes.  No other common law duties exist.'" (quoting *Pro Value Props., Inc. v. Quality Loan Serv. Corp.*, 88 Cal. Rptr. 3d 381[, 384] (2009))).  Therefore, there is no general duty of care here, but there is a duty of care as defined by the Nevada foreclosure statutes, assuming the Nevada Supreme Court would hold as the California Supreme Court did in *Pro Value Props., Inc.*

Plaintiff includes a laundry list of statutes and regulations.  But as stated above, only regulations governing foreclosures create duties giving rise to a negligence claim in the foreclosure context.  Plaintiff cites to lending and disclosure regulations that do not create duties giving rise to a negligence claim.  Plaintiff does not plead violation of foreclosure statutes under this cause of action, and in any case, the Court can conclude from what has already been stated that there was no defect in foreclosure, and hence no breach of any duty of care.  Therefore, the Motion to Dismiss (#9) is granted as to the Seventh and Eighth Causes of Action.

**H.    Negligent Misrepresentation**

"[A] claim for negligent misrepresentation requires a plaintiff to plead: 1) a representation that is false; 2) that the representation was made in the course of the defendant's business or in any action in which he has a pecuniary interest; 3) the representation was for the guidance of others in their business transactions; 4) the representation was justifiably relied upon; 5) that such reliance resulted in pecuniary loss to the relying party; and 6) that the defendant failed to exercise reasonable care or competence in obtaining or communicating the information." *G.K. Las Vegas Ltd. P'ship v. Simon Prop. Group, Inc.*, 460 F. Supp. 2d 1246, 1262 (D. Nev. 2006).  Furthermore, under Rule

1    9(b), circumstances constituting fraud or mistake must be stated with particularity. Fed. R. Civ. P.

2    9(b).  A Plaintiff must plead facts such as "he bought a house from defendant, that the defendant

3    assured him that it was in perfect shape, and that in fact the house turned out to be built on a landfill

4    . . . ." *Warshaw v. Xoma Corp.*, 74 F.3d 955, 960 (9th Cir 1996) (quoting *In re GlenFed, Inc. Sec.*

5    *Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1995) (en banc)).

6          Here, Plaintiff claims that Defendants negligently failed to provide "the information that

7    Plaintiff relied upon . . . in a manner that he would understand . . . ." (#1 at ¶ 77).  Plaintiff claims

8    this resulted in damages.  This is the extent of Plaintiff's pleading as to the facts surrounding the

9    alleged negligent misrepresentation.  This is insufficient.  Plaintiff makes no claims as to which

10   Defendants made which particular fraudulent or negligent statements at what times or what was

11   fraudulent or negligent about them.  Plaintiff's allegations are entirely conclusory.  The Motion to

12   Dismiss (#9) is granted as to the Ninth Cause of Action.

13   **I.     Unfair Lending Practices Under Nev. Rev. Stat. § 598D**

14          Plaintiff received the present mortgage on or about August 28, 2007.  Nev. Rev. Stat. §

15   598D.100 was amended in 2007, with an effective date of June 13, 2007. *See* 2007 Nev. Stat.

16   2844–46. Therefore, the post-2007 version of the statute applies to the present case. Defendants are

17   incorrect that the prior version applies.  They provide evidence that Gomez purchased the home in

18   March 2006. (#8, Ex C.).  But the current note and deed of trust date to August 20, 2007, indicating

19   a refinance of the mortgage.  It is for this very reason that Gomez's "wrongful trustee substitution"

20   argument fails.  Recontrust is the original trustee on the August 2007 deed of trust.  The prior statute

21   made it actionable if a lender made "a home loan to a borrower based solely upon the equity of the

22   borrower in the home property and without determining that the borrower has the ability to repay the

23   home loan from other assets . . . ." Nev. Rev. Stat. § 598D.100 (2006).  The current statute broadens

24   the protection given to consumers by making it actionable when a lender knowingly or intentionally

25   makes "a home loan . . . without determining, using any commercially reasonable means or

1    mechanism, that the borrower has the ability to repay the home loan." Nev. Rev. Stat. § 598D.100

2    (2009).  Plaintiff has claimed this, but the claim is an entirely conclusory recitation of the statutory

3    cause of action.  Nowhere in the Complaint is it alleged how Defendants calculated or assessed

4    Plaintiff's ability to repay or why their method was not commercially reasonable.  The Motion to

5    Dismiss (#9) is granted as to the Tenth Cause of Action.

6    **J.    Intentional Infliction of Emotional Distress**

7          The elements of intentional infliction of emotional distress in Nevada are:  "(1) that the

8    defendant's conduct was extreme and outrageous; (2) that the defendant either intended or recklessly

9    disregarded the causing of emotional distress; (3) that the plaintiff actually suffered severe or

10   extreme emotional distress; and (4) that the defendant's conduct actually or proximately caused the

11   distress." *Nelson v. City of Las Vegas*, 665 P.2d 1141, 1145 (Nev. 1983).  Plaintiff has not even

12   bothered to recite the elements of this cause of action in conclusory fashion, much less make out a

13   prima facie claim.

14         Instead, Plaintiff notes that Defendants had a duty "to each of the Plaintiff to not take their

15   home by fraudulent acts;"[3] that this duty (and others) were breached; that it was foreseeable that this

16   would cause emotional distress; and that humiliation, harm to reputation, and physical and emotional

17   distress resulted.  Plaintiff claims intentional infliction of emotional distress in the heading, but then

18   goes on to support the claim with allegations more suitable to claims for defamation (reputation),

19   negligence (foreseeability), and negligent infliction of emotional distress (physical and emotional

20   distress).  There is no claim of any extreme and outrageous conduct, no claim of intent or

21   recklessness, and no claim of "severe or extreme" emotional distress.  The Motion to Dismiss (#9)

22

23          [3]Here there is more evidence that this is a form complaint with little thought involved.  It

24   is evident that someone has executed a search/replace in a word processing application to replace

25   "Plaintiffs" with "Plaintiff."

1    is granted as to the Eleventh Cause of Action.

2    **IV.     SANCTIONS UNDER RULE 11**

3            A district court may order a party or the party's counsel to show cause why sanctions should

4    not be imposed when "claims, defenses, and other legal contentions are [not] warranted by existing

5    law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for

6    establishing new law." Fed. R. Civ. P. 11(b)(2) and (c)(3).  Although a pro se litigant would not be

7    properly subject to sanctions in the present case, this litigant is represented by counsel, and Messrs.

8    Chambers and Selik have filed the present form complaint many times.  The present Complaint is

9    entirely without merit, and at least one of the causes of action is utterly frivolous:  the "suitability"

10   cause of action, which has been repeatedly rejected in this Court and others. *See, e.g.*, *Velasquez v.*

11   *HBSC Mortgage Servs.*, 2:09-cv-00784-KJD-LRL, 2009 WL 2338852, at *4 (D. Nev. July 24, 2009)

12   (Dawson, J.); *Rangel v. DHI Mortgage Co., Ltd.*, CV F 09-1035 LJO GSA, 2009 WL 2190210, at

13   *3 (E.D. Cal. July 21, 2009); *Sheets v. DHI Mortgage Co., Ltd.*, CV F 09-1030 LJO DLB, 2009 WL

14   2171085, at *3 (E.D. Cal. July 20, 2009); *Spencer v. DHI Mortgage Co., Ltd.*, CV F 09-0925 LJO

15   DLB, 2009 WL 1930161, at *2 (E.D. Cal. June 30, 2009).  This is only a sample of the reported

16   cases, to say nothing of the number of times the "suitability" cause of action has been dismissed in

17   this very Court.  The present case was filed in the Clark County District Court, but under the *Erie*

18   doctrine, the estimation of the merits of claims does not change by removal.  Only fifty-two cases

19   in the Nevada Reports employ the word "suitability" in any context at all, and none of them use it

20   in the context of a party's suitability to enter into a contract or investment.  Most use the word to

21   refer to suitability of a parent to retain custody of a child, suitability to hold a gaming license, or

22   suitability of building materials.  No case uses it in connection with a loan or any cause of action at

23   all.

24

25

1    Nor can counsel claim the "suitability" cause of action is really a negligence theory.  They

2  have clearly pled "negligence" as a separate cause of action.  This leads to the next point.  Counsel

3  has pled a cause of action called "liability per se."  As discussed in more detail above, this is legally

4  frivolous for two reasons.  First, the proper doctrine is "negligence per se."  There is no such thing

5  as "liability per se."  Second, even "negligence per se" is not a separate cause of action apart from

6  negligence, but rather it is a doctrine whereby a plaintiff can satisfy the duty and breach elements of

7  a negligence cause of action as a matter of law without submitting the breach issue to the fact-finder

8  for a reasonableness finding.

9    A pro se plaintiff undergoing eviction could perhaps be excused for a legally unmeritorious

10  attempt to stall his foreclosure; however, an officer of the Court cannot be similarly excused when

11  he takes a client's money to facilitate such a futile attempt and thereby adds to the ever-growing pile

12  of novel, unmeritorious, cookie-cutter, and sometimes downright bizarre foreclosure-related

13  complaints currently clogging the Court's docket.  It would reflect poorly on the legal profession if

14  this were to become a profitable industry.  Plaintiff's counsel will not be subject to sanctions in the

15  present action, but should not plead "suitability" in this Court again and should study the doctrine

16  of "negligence per se" before pleading it improperly in their next case.

17                                    **CONCLUSION**

18    IT IS HEREBY ORDERED that the Motion to Dismiss (#9) is GRANTED without leave

19  to amend.

20    DATED: October 26, 2009.

21

22

23  _____

24  Robert C. Jones
    United States District Judge
(eh)

25